Our next case on the call this morning is number 127666. People of the State of Illinois v. Michael Wilson. This is number 7. And welcome back, counsel, for the hearing. May it please the court, counsel. I am Assistant Attorney General Gopi Kashyap on behalf of the people of the State of Illinois. This court should reverse the appellate court's judgment because petitioner failed to show cause for his failure to raise his Eighth Amendment claim in his initial post-conviction petition and prejudice under Miller v. Alabama. This case may easily be disposed of on prejudice grounds based on the United States Supreme Court's decision in Jones v. Mississippi, which is controlling, and which this court has applied in People v. Robert Jones and in People v. Dorsey, and under which it is clear that petitioner's life sentence comports with the Eighth Amendment under Miller. In Jones v. Mississippi, the U.S. Supreme Court held that the juvenile offender's life sentence there comported with Miller because it was not mandatory and the trial court had discretion to impose a sentence of less than life. In People v. Dorsey, in paragraph 65, the court explained that and applied that holding. The court stated, after Jones v. Mississippi, the juvenile offender's sentence, if it were life, complies with Miller because, and I quote, the trial court had discretion to consider defendant's youth and impose less than a de facto life sentence. Then, in People v. Robert Jones, in paragraphs 27 to 28, this court elaborated in the context of a claim of prejudice in a successive post-conviction petition. The court explained that to establish prejudice under Miller, the petitioner needs to show that the de facto life sentence was not entered as the result of the trial court's use of discretion, and it further explained that both this court and the United States Supreme Court permit the imposition of discretionary life sentences on juvenile homicide offenders, and that Miller applies only when the trial court lacks or refuses to use discretion in sentencing the juvenile offender to life. Applying that Jones v. Mississippi, in People v. Robert Jones, this court held that because the statutory scheme did not compel Robert Jones's life sentence, his Miller claim failed as a matter of law. The same is true here. Petitioner received a discretionary life sentence. The statutory scheme did not compel that sentence. The trial court had discretion and did not refuse to exercise that discretion in sentencing the petitioner to life. Thus, because the sentence was not mandatory and the trial court had discretion to impose a sentence of less than life, petitioner's Miller claim fails as a matter of law, and he cannot show prejudice. Counsel, if we decide in the way that you're asking us to, how does that impact our decision in Holman? The other components of Holman were that the court did not impose a discretionary life sentence. The court did not impose a discretionary life sentence. The court did not impose a discretionary life sentence. The other components of Holman were that the court needs to make a determination of incorrigibility. In Jones v. Mississippi, the court specifically stated that no explicit or implicit finding of permanent incorrigibility is required, so that part of Holman is no longer good law. Holman also states that the court must consider, actually consider, the Miller factors. But in Jones v. Mississippi, the court said that if a trial court is provided the opportunity to consider the factors by giving the trial court the discretion to consider those factors, that in and of itself is sufficient to comply with Miller. The court rejected the arguments that this court adopted in Holman in favor of applying Miller to discretionary sentences. And there is some lingering confusion in the appellate court about this. The appellate court continues to apply Holman instead of Jones v. Mississippi, or even today, Dorsey or Robert Jones. And so we ask the court to overrule Holman to make it clear that for this Eighth Amendment claim, the controlling precedent is Jones v. Mississippi. And this court has shown how to apply that in Dorsey and Robert Jones, and it should overrule Holman for those reasons, because the U.S. Supreme Court has said the U.S. Supreme Court provides binding precedent on the Eighth Amendment, and so its decisions control. Would our Constitution, the Illinois Constitution, be implicated? Not currently. Based on the Illinois Constitution, there could be greater rights than the U.S. Supreme Court would accept under the U.S. Constitution. That is a question for another day, Your Honor. Petitioner has not presented the penalties provision claim before this court. And whether it would be impacted, I think, would be something that would require a full briefing. The Illinois Constitution operates very differently than the Eighth Amendment, and while it does provide greater protection in certain circumstances, it does not always. And in Robert Jones, this court stated specifically that both this court and the U.S. Supreme Court permit the imposition of discretionary life sentences. And that's based on, in People v. Davis, the court stated the same thing, relying on People v. Leon Miller. So this has been something that, under the penalties provision at least, this court has actually said that discretionary life sentences are permissible based on the facts. I mean, the Illinois Constitution has some strong language about rehabilitation and other things with regard to sentencing in 1970, correct? It does. And that's part of the reason that the discretionary sentencing procedure here is consistent with Miller. I mean, the Illinois Constitution requires sentencing courts to consider rehabilitative potential. And this court has long held that youth is a mitigating factor. Going back over 100 years, the court has stated that for juveniles, that youth is a mitigating factor. And even before Miller v. Alabama and People v. Leon Miller, this court overturned a mandatory life sentence for a 14-year-old, 15-year-old. I mean, the reason I'm asking this question, we're, what do you say, a limited lockstep? The court has never actually gone so far as to explain the exact relationship between the penalties provision and the Eighth Amendment. People v. Clement, the court said that they were different. The identical elements test, for example, does not exist in the Eighth Amendment. As to how to evaluate discretionary sentences in Periquet and LaPointe way back, you know, in the 80s, the court explained that the Illinois Constitution simply requires courts to use discretion and consider the two objectives. And the court hasn't really given it more bite. So I think the question of whether more protection should be provided under the penalties provision and the relationship between those two provisions is not exactly clear. I think the most recent pronouncement was in People v. Cody, where the court stated that certainly if the Illinois Constitution would say that the sentence is constitutional, unless there was a different national societal consensus, then it would satisfy the Eighth Amendment. So that is an open question, which is why this court should not reach whether to provide greater protections under the penalties provision at this point. And I'd note that Petitioner did raise a penalties provision claim in his motion for leave to file. And so if the court — we asked the court to reverse the appellate court's judgment here on the Eighth Amendment claim and then remand it back to the appellate court to consider whether he can satisfy the cause and prejudice test for his penalties provision claim. Which was raised earlier in the law. Sorry? It was raised earlier in the law. Yes. I think it was — are you — is Your Honor referring to prior proceedings or in the motion? In the motion on that, right? Yeah, he did raise — he did cite the Illinois Constitution and the penalties provision in his motion for leave to file. So it is still an open question for the appellate court. I mean, I'm — you know, I know that's not what was all briefed, but it was raised, and that's the reason I'm asking you the question. Yeah, it was raised in the motion. So I've ignored that. Yeah, it was raised in the motion, but the appellate court didn't reach it. So the appellate court's decision was limited to an Eighth Amendment holding. And so that — and we brought a PLA for the Eighth Amendment holding. And specifically to clarify that Jones v. Mississippi is the controlling precedent for Petitioner's Eighth Amendment claim. And under that precedent, his claim fails. And so there's no reason to breach the penalties provision claim at this point because the appellate court hasn't had a chance to weigh in on it. So it was — if we agreed with you on the Eighth Amendment, it would need to be remanded then for the consideration of the Illinois Constitution? Well, the case would need to be remanded to the appellate court to determine whether Petitioner had satisfied the cause and prejudice test to raise his penalty — like his Illinois Constitutional claim. That issue is still open and hasn't been decided. Thank you. So this court can dispose of this case on prejudice grounds based on the controlling precedent. And I would just touch briefly on the cause question because the case is unique in that — not unique, but unlike the cases Petitioner has cited — in that Petitioner raised his claim after Miller. So Miller was in existence at the time that he was sentenced. Miller was in existence at the time that he filed his direct appeal. And certainly Montgomery and Miller had been decided by the time he filed his initial post-conviction petition. As the court is well aware, there was a robust body of case law applying Miller to lengthy discretionary sentences by the time of September 2016. This was an issue that was percolating. And the question of cause is whether a claim is reasonably available to the Petitioner. And here, Petitioner certainly could have raised his claim in his initial post-conviction petition and did not do so. For these reasons, we ask the court to reverse the appellate court's judgment because Petitioner did not satisfy the cause and prejudice test for his Eighth Amendment claim.  Thank you, Counsel. Counsel for the appellate. Good morning, Your Honors. Andy Boyd from the State Appellate Defender's Office. I'm here on behalf of Michael Wilson. If it please the Court and Counsel. Fourteen years old. Fourteen years old. An intellectual age of nine or ten when he committed this offense. Nine or ten. Nine or ten. He was operating at the intellectual level of a second grader. He was unable to write his address. He was unable to write his address. He was unable to determine the correct amount of change that would equal 87 cents. That was Michael Wilson's developmental status when he committed this offense. He was not the shooter. And I want to underline it. He was not the shooter. He was convicted on a theory of accountability. The jury expressly found that Michael Wilson was not the shooter. Was the trial court aware of all these facts? Yes, I'm sure it was. Yes, I'm sure it was. He was born with cocaine in his system. He suffers from a plethora of developmental problems. The pre-sentence investigation report is about this thick, outlining all of his developmental problems. Despite all of his developmental problems, despite his intellectual and his developmental age at the time he committed this offense, despite the fact that he was not the shooter, despite what the undisputed science says about the juvenile brain as aptly pointed out by Amicus in this case, despite all these things, the state nevertheless insists that Michael's de facto life sentence fully comports with the Eighth Amendment and seeks to imprison him for the rest of his life. Before I dive into the complex legal issues here, let's take a step back and let's think about Michael as a human being here who has been devastated by forces beyond his control. This is the human being. This is the person that the state seeks to imprison for the rest of his life. And it's also fair to point out here that the actual shooter, Byron Moore, was given a deal by the state for a conviction of armed robbery for which he is going to serve 25 years. The actual shooter here is going to be out of prison when he is 46 years old. If the state get what it wants here, Michael, with all of these developmental problems, with his age, with his developmental age being lower than that which would have allowed him to be prosecuted in the state of Illinois for a criminal offense, despite all these things, the state says, Michael, you must spend the rest of your life in prison. Michael, you must die in prison for this offense. Counsel, what is your legal theory for how this court can vacate that sentence? Certainly. I'm more than happy to dive into legal arguments. Thank you, Your Honor. What I'd like to do is start with the United States Supreme Court decision in Jonesview, Mississippi, and this goes towards the President's issue. I'm more than happy to answer any questions this Court might have about cause. I've thoroughly outlined that in my brief. I believe that Michael has shown cause based on these Illinois cases that came down after he filed his initial post-conviction petition. Counsel, do you agree that we're here looking at the Eighth Amendment claim that was resolved by the appellate court? I do agree with that. I think the state is correct to take that stance. If you read the Rule 23 decision issued by the appellate court, their analysis was a brief analysis, and it focused on Miller and the Eighth Amendment. It really did not touch on Illinois in proportion to penalties, which we did raise on appeal. And so one of the very few things that I do agree with the state here is that if, unfortunately, this Court were to rule against Michael, that what this Court ought to do is to send this thing back to the appellate court so that the issue of the proportion of penalties caused can be fully briefed there. In the appellate court opinion that you're discussing, this is an opinion, am I correct on this, that came out after the United States Supreme Court ruled in the Jones case on all of these issues, and yet they don't cite Jones at all, correct? To be truthful, Your Honor, I don't have those dates firmly in my mind, so I can't say for sure, but my impression is that you're correct about that, is that this Court's decision in Jones was available to the appellate court. The Eighth Amendment may have been available to the appellate court when the State filed their petition for a rehearing. So at some point, I do think the issue of how Jones impacts the Miller line of cases, was litigated at all, raised by you or anyone else in the appellate court? Not to my knowledge. Well, excuse me, excuse me. I did not raise that. I do believe the State did at the appellate court level, and I think that's part of the reason that we had this PLA, was because the State was concerned that the appellate court didn't address Jones v. Mississippi. So you're asking us, as a matter of first impression or even, maybe I'd put it a different way, but even though this was not raised or litigated or written about in the appellate court, you're asking us to now take a stab at what Jones means in light of our precedent that had flowed earlier from Miller. Is that correct? I didn't bring this case to the Supreme Court, Your Honor, the State did. I'm not asking this Court to do anything other than affirm the appellate court. Can we affirm the appellate court when they don't even engage the most recent United States Supreme Court case on the Eighth Amendment? I'm not privy to the appellate court's justices' negotiations and discussions on this matter, Your Honor. All we do is brief the case and submit it to the court. The court reaches their decisions. I don't know how or why the court reached the decision that it did. But nevertheless, here we are. Here we are, and that's the issue before this Court. And it's our position that what Jones v. Mississippi did was to answer a very narrow procedural question, and that's the question of does a sentencing court need to make a finding of permanent incorrigibility, either an express or an implicit finding of permanent incorrigibility, before sentencing a juvenile to life in prison. And Jones v. Mississippi said no, don't have to do that. That's all. That's all Jones v. Mississippi did. And it bears emphasizing that if you read that decision in Jones v. Mississippi, Justice Kavanaugh has a great pains to say, and he says it over and over and over again, we are not disturbing Miller, we are not disturbing Montgomery. What we're doing is closely following that precedent, and all we're doing is answering a very simple procedural question here. That's it. That is, of course, how the majority is written by Justice Kavanaugh. Certainly there are a number of other writings in Jones, including from Justice Thomas, that says why don't you just come out and say the truth, which is we're over Willie Miller. Are you aware of any other cases from around the country where courts have dealt with the issue that you are raising apparently here for the first time, as to how Jones affects the Miller line of cases? Well, the state has cited a number of cases in their brief. I'm aware of those cases. There's also Stacey Kelleher, which we cited in our case. There's also the Hogg case, which the state has cited in their brief. So there's authority going both ways. Yes, there is some authority going the way the state urges. They have to concede that. There's also some authority going the way that myself and Michael would urge. And in my very humble opinion, the Court's reasoning in Stacey Kelleher was very persuasive. And what that Court focused on, which is what I would urge this Court to focus on, is not to overly broaden what Jones v. Mississippi did. There's no reason to do that. And it's not just me making this argument. It's Justice Kavanaugh expressly saying, look, I'm not, we are not, we, meaning the United States Supreme Court, we are not overruling Miller v. Alabama. We're not overruling Montgomery. We are not breaking this long line of precedent regarding juvenile sentencing. All we're doing, and Justice Kavanaugh says it over and over and over and over again, all we're doing is answering this very simple procedural question. But what he says over and over again, too, is what his belief and the majority's belief is what Miller says. And what he says is Miller held that the cruel and unusual punishments clause of the Eighth Amendment prohibits mandatory, and he italicized mandatory, mandatory life without parole sentences for murderers under 18, but the Court allowed discretionary, again, italicized discretionary life sentences, I'm sorry, life without parole sentences for those offenders. So, I mean, I understand what the holding was, but I also look at how the Supreme Court reads Miller, and that's what they're saying. Sure. And it's reasonable to point out that there's some language in Jones v. Mississippi that goes the way the State would like this Court to go. I can't deny that. That language is in there. But what's also in there is a sentencing court has to consider not just youth, as the State urges here, but youth and its attendant characteristics. Jones v. Mississippi expressly says that. It says, number one, we're not overruling Miller, we're not overruling Montgomery, and number two, more importantly, youth and its attendant characteristics must be considered by a sentencing court if we're going to sentence a juvenile to life in prison. Does Miller apply in both mandatory sentencing and discretionary sentencing? Yes, it does. This Court should not overrule that portion of Holman, and I've outlined that in my brief. And the reason for that Can you tie it back to Jones? Does Jones change that analysis? I don't believe that it does, because Jones talks about not just youth, but youth and its attendant characteristics. We see that a couple of times in the Jones decision. And if it's true, number one, that Miller and Montgomery haven't been overruled, and if it's true, number two, that a sentencing court has to consider youth and its attendant characteristics, then that has to apply to a discretionary sentencing hearing. It can't be any other way. It can't logically be any other way. If a court is going to consider all these things, and it must, under Jones v. Mississippi, a court still must consider youth and its attendant characteristics. And if a sentencing court's going to do that, it has to have the discretion to do that. There's no other logical way for this to proceed. What the State is proposing is simply illogical. It just doesn't compute. If you are going to consider youth and its attendant characteristics, that gets done at a discretionary sentencing hearing. There's no other way it can be. There's no other logical way for that to happen, Your Honor. I'd also like to point out that if we go back to the Montgomery case, Montgomery said Miller announced a substantive rule of constitutional law. A substantive rule of constitutional law. And we start with the fundamental principle, and this hasn't changed. Jones v. Mississippi did not change this fundamental principle. Children are constitutionally different, constitutionally different for the purposes of sentencing. And if that's true, and it is true, because the Jones court told us that, if that's true, what follows from that? Well, all right. That means that sentencing courts still have to take into account how children are different and how those differences counsel against irrevocably sentencing somebody to life in prison. And the Miller court, which is still a good law, outlined all these circumstances that are attendant to youth. Chronological age, immaturity, impetuosity, failure to appreciate risks and consequences, which amicus hits on very well. Juveniles simply don't have that ability to understand long-term consequences of their actions. Their brains just aren't wired to do that. The science is indisputable on that. And, crucially, the prospects for the juvenile's rehabilitation. A sentencing court has to consider all of those things. And when a sentencing court does that, what the sentencing court is going to find is that it's going to be a very rare juvenile who is so irrevocably horrible that we have to say, okay, this person, this one single solitary person is so horrible at 14 years old that we're just certain, we're certain as we can be, that when this person is 74 years old, he's going to be equally horrible and he must die in prison. Counsel, you've laid out a very compelling factual argument here, especially when you open, but how do we know the sentencing judge did not consider these things? Because we read the transcripts. We read the transcripts. And what the court focused on was Michael's failings in all the residential and outpatient treatments that he'd been involved in when he was a juvenile. And it's unfortunate. Michael was a terribly troubled youth. The debt was stacked against him from the time that he was in his mother's womb because he was born with cocaine and amphetamine in his system. And what the sentencing court did was just to focus on all these unforeseen realities that, yes, he did some impetuous things when he was in these facilities. He was noncompliant. He was a bully in some cases. He didn't act very well, frankly, in these places. And that's what the sentencing court focused on. What the sentencing court did not focus on, and this is indisputable, Michael had rehabilitative potential. Both of the experts that examined him, when it was being decided as to whether or not to transfer this case to the adult court, both of these experts decided that Michael did have rehabilitative potential, and the court didn't consider that. Counsel, in looking at language from Jones, when it was explaining what Miller means and what it said, would you agree that in this instance that the judge did have the opportunity to consider your client's youth and had the discretion to impose a different sentence? Certainly the court had the discretion. I think part of my argument here in response to your question is that at this sentencing hearing, the law surrounding Miller was in its infancy at the time. We didn't know about all the things that we know now about juvenile brains. We didn't have all these backdrops, particularly in Illinois law. We didn't have Reyes. We didn't have Holman. We didn't have Buffer. We didn't have any of these things. So the court did not consider those things, but now we know that this was an error. This was an error. So, yes, to answer your Honor's question, yes, the court did have the discretion to consider Michael's youth, but the court didn't have the opportunity to have considered all of this precedent that came down later, and part of what the state, I think, is trying to do here is to take a meat cleaver at all in that precedent and say that we're just going to cut this stuff off. At the end of the day, this court should not do that. What about the other language in Dorsey where we said, clearly the trial court had discretion to consider the defendant's youth and impose less than a de facto life sentence. The Supreme Court in Jones stated that a sentencing decision imposed under such parameters complies with Miller. All due respect to this honorable court, that was an overly simplistic analysis. It was undertaken in my very humble opinion and respectfully without a thorough reading of the Jones decision because the Jones decision says over and over again that Miller remains good law and that sentencing courts must consider youth and its attendant characteristics when it fashions a sentence. Just to wrap up, I see that my time is running short. I would also like to talk briefly about the notion of permanent incorrigibility. We would urge this court to fashion a decision that in some way acknowledges that permanent incorrigibility still matters. Even though there doesn't have to be a formal determination, permanent incorrigibility still matters. And why does it matter? Well, we've got these Miller factors that are now codified in Illinois law, chiefly among them being the prospects of rehabilitation. All these Miller factors that are now codified in Illinois law, all these things dovetail. They logically dovetail towards the notion of permanent incorrigibility. If we are going to consider all these factors, why are we considering these factors? Well, the reason that we're doing so is because we're trying to determine whether the individual, the juvenile before the court, is one of these very rare persons who has to be warehoused until he or she dies, or whether he's one of the vast majority of juveniles who has rehabilitative potential. So I would urge this court respectfully not to throw out, to simply throw out the notion of permanent incorrigibility. Even though there doesn't have to be any magic words, even though there doesn't have to be a formal finding, permanent incorrigibility matters. It is the cornerstone of sentencing in juvenile cases when we are trying to determine whether to sentence a juvenile to die in prison. It's the cornerstone. In conclusion, I'd like to ask this court respectfully to affirm the decision of the appellate court. If there's no more questions, thank you, Your Honor, for your time. Thank you, counsel. Counsel to the appellant. Excuse me. Jones is the only case from the United States Supreme Court that has considered the constitutionality of a juvenile homicide offender's discretionary life sentence. And in that case, the Supreme Court upheld the sentence without examining the record to see what factors the trial court had considered, without looking at whether the trial court explicitly talked about the mitigating factors of youth or made any findings of permanent incorrigibility implicitly or explicitly. The court upheld the sentence because it was not mandatory and the trial court had discretion to impose a sentence of less than life. In Dorsey, this court applied that. It virtually mimicked the language from Jones and it applied that to that circumstance. And the court did that again in Robert Jones. The U.S. Supreme Court is in charge of interpreting its own decisions. It controls how the Eighth Amendment works, and the court interpreted its decisions in Miller and Montgomery. Walking it back just a step, you know, Miller's actual holding, its core holding, is that the Eighth Amendment prohibits mandatory life without parole. That was the core holding of Miller. And the opinion had a lot of language in it that courts have relied on to extend Miller. Montgomery's core holding was that Miller is a retroactive rule because it's substantive. In Jones, the court declined to overrule that part of Montgomery. But there is a lot of language in Jones limiting Montgomery specifically to that, that Miller is retroactive so anyone who received a mandatory life sentence, whenever they received it, is entitled to get a discretionary sentence in hearing. Petitioner relies on Kelleher, which is a case out of the North Carolina Supreme Court. Kelleher and a couple other cases, there has been a split that has arisen after Jones v. Mississippi. And the split concerns when a trial court finds the juvenile offender to be redeemable, to be not permanently incorrigible, and nevertheless sentences the juvenile offender to life without parole. So the question has arisen on how that circumstance works after Jones and in light of Miller. And there is a split. The Third Circuit Court of Appeals in an en banc decision said that that type of claim is not a Miller claim. It is a claim under the gross disproportionality principles of the Eighth Amendment if the juvenile wants to raise it. The North Carolina Supreme Court disagreed, and I believe the Washington Supreme Court has also disagreed. So that is a split that has arisen on a different question. But all of those decisions agree that on the facts presented here, where the trial court did not find the particular offender redeemable or not permanently incorrigible, that Jones precludes relief. And so the issue presented in Kelleher and those other decisions is simply not before the court. And there is no decision that disagrees with this court's interpretation of Jones v. Mississippi. And so the court should, again, reaffirm that, as it did in Dorsey and Robert Jones, that petitioner's sentence comports with the Eighth Amendment because it was not mandatory and the trial court had discretion to impose a lesser sentence. Unless the court has any further questions, we ask the court to reverse the appellate court's judgment and remand to the appellate court for consideration of the remaining issue presented. Thank you very much. This case, Peoples v. Michael Wilson, No. 17666, Agenda No. 7, is taken under advisement. Thank you, counsels, both for your spirit of argument and counsel for the appellate.